# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| DAKOTA BURCHARD, § § *Plaintiff*, § § v. § § CORECIVIC OF TENNESSEE, LLC, § as owner and operator of TROUSDALE § TURNER CORRECTIONAL CENTER, § TROUSDALE COUNTY, TENNESSEE, § MARTIN FRINK, JERMARIS PORTER, § [JANE] WRIGHT, COURTNEY § CRAWFORD, and LYBRUNCA § COCKRILL, § § *Defendants*. § | Case No. _____ JURY DEMANDED |

## COMPLAINT

For his Complaint against the Defendants, the Plaintiff states to the Court and the Jury as follows:

### I. INTRODUCTION

1. On May 13, 2022, inmate Dakota Burchard was violently assaulted and raped by multiple inmates at Trousdale Turner Correctional Center in a pod that was supposed to be locked down.

2. However, because Trousdale Turner Correctional Center is a private, for-profit prison operated by Defendant CoreCivic of Tennessee, LLC, Mr. Burchard's unit was understaffed and unsupervised, allowing dangerous gang-affiliated inmates who had threatened to murder Mr. Burchard to roam freely without consequence.

3. Despite the fact that Mr. Burchard repeatedly asked to be placed in

- 1 -
Case 3:23-cv-00455   Document 1   Filed 05/08/23   Page 1 of 20 PageID #: 1

protective custody due to the threat against his life, prison officials took no action to ensure that Mr. Burchard would be kept safe.

4. CoreCivic—which changed its name from Correction Corporations of America in 2017 after that name became synonymous with the most insidious aspects of American's private prison industry—is the nation's most notorious private prison operator. To maintain its profit margin—and as a result of its chronic and profit-motivated deliberate indifference to inmate health and safety—CoreCivic serially underinvests in prison staff, security, and inmate healthcare at its prisons, leading to predictable and horrific results.[1]

5. Due to CoreCivic's chronic and deliberate understaffing policies, Mr. Burchard's pod was not locked down during the time of his assault despite an institutional lockdown being in place.

6. On notice both generally that CoreCivic's understaffing policies routinely result in extreme and preventable violence and specifically that a threat had been made on Mr. Burchard's life, the Defendants still took no action to lock down the pod, to ensure the pod was adequately staffed to maintain proper lockdown, or to ensure that Mr. Burchard was protected from the imminent harm threatened to his life.

7. As a result, three inmates entered Mr. Burchard's cell, beat him

---

[1] *See, e.g.*, Allison Kite, *For-profit Kansas prison an understaffed 'hell hole' of violence, death and drugs*, KANSAS REFLECTOR (Oct. 7, 2021), https://kansasreflector.com/2021/10/07/for-profit-kansas-prison-an-understaffed-hell-hole-of-violence-death-and-drugs/; Samantha Michaels, *The Feds Just Slammed One of the Country's Biggest Private Prison Companies—Once Again*, MOTHER JONES (April 26, 2017), https://www.motherjones.com/politics/2017/04/justice-department-audit-corecivic-marshal-service-leavenworth/; Cassandra Stephenson, *A TN inmate was fatally beaten for coffee at a private prison. His widow seeks justice*, JACKSON SUN (May 29, 2019), https://www.jacksonsun.com/story/news/2019/05/29/corecivic-tennessee-lawsuit-alleges-inmate-died-due-understaffing-lack-medical-care-earl-johnson/1272710001/; Daniel Arkin, *Tennessee Audit Finds Rampant Understaffing, Other Issues at Prisons*, NBC NEWS (Nov. 14, 2017), https://www.nbcnews.com/news/all/tennessee-audit-finds-rampant-understaffing-other-issues-prisons-n820746.

unconscious, and raped him.

8. Mr. Burchard was later discovered unconscious with his pants pulled down laying on the ground.

9. Instead of immediately transporting Mr. Burchard for treatment, Mr. Burchard awoke to find himself *in handcuffs*, surrounded by the same guards who he begged for help the day prior.

10. This lawsuit seeks an award of damages for the injuries Mr. Burchard has suffered and continues to suffer as a result of a brutal assault and rape that the Defendants chose not to prevent.

## II. PARTIES

11. Dakota[2] Burchard is an inmate in the custody of the Tennessee Department of Corrections. At all times relevant to this Complaint, Mr. Burchard has been in the custody of the State of Tennessee and resided at Trousdale Turner Correctional Center.[3] Mr. Burchard may be contacted through counsel.

12. Defendant CoreCivic of Tennessee, LLC—which went by the name "Correction Corporations of America" before that name became synonymous with the most insidious aspects of America's private prison industry—is a private, for-profit prison corporation that cages human beings for money. CoreCivic owns and operates Trousdale Turner Correctional Center, the private prison that allowed Mr. Burchard to be physically

---

[2] The Tennessee prison system has Mr. Burchard's first named spelled "Dekota," which appears on much of his paperwork and which he has sometimes used on official paperwork to facilitate its acceptance. His first name is actually spelled "Dakota," though, so that spelling is used here.

[3] A draft of this Complaint—which initially contained claims for preliminary injunctive relief—was mailed to Mr. Burchard by his counsel for his review shortly before it was filed. Counsel's legal mail was opened by Trousdale Turner Correctional Center employees—and its provision to Mr. Burchard was delayed—before it reached him, though. Mr. Burchard was then abruptly transferred to Bledsoe County Correctional Complex days later, just before this Complaint was filed.

and sexually assaulted through customs and policies of understaffing and profit-motivated deliberate indifference to inmate safety. CoreCivic is a citizen of Tennessee with its principal place of business and corporate headquarters located in Brentwood, Tennessee. CoreCivic may be served with process through its registered agent at CoreCivic of Tennessee, LLC, Registered Agent: C T CORPORATION SYSTEM, 300 MONTVUE RD., KNOXVILLE, TN 37919-5546.

13. Defendant Trousdale County is a county government in Tennessee. At all times relevant to this Complaint, Trousdale County subcontracted with Defendant CoreCivic to operate Trousdale Turner Correctional Center pursuant to the County Correctional Incentives Act of 1981. Trousdale County may be served with process through its counsel and upon its mayor.

14. Defendant Martin Frink is a citizen of Tennessee who was employed as the warden of Trousdale Turner Correctional Center at all times relevant to this Complaint. As Trousdale Turner Correctional Center's day-to-day overseer who was responsible for supervising its staff—including staff members who were responsible for responding to imminent threats of violence and properly locking down pods when required—Mr. Burchard's assault is attributable to Mr. Frink's deliberate indifference to Trousdale Turner Correctional Center's chronically unconstitutional understaffing conditions. Defendant Frink continues to be employed by Defendant CoreCivic.

15. Defendant Jermaris Porter is a citizen of Tennessee who at all times relevant to this Complaint was employed as correctional officer at Trousdale Turner Correctional Center.

16. Defendant Jane[4] Wright is a citizen of Tennessee who at all times relevant to this Complaint was employed as correctional officer at Trousdale Turner Correctional Center.

17. Defendant Courtney Crawford is a citizen of Tennessee who at all times relevant to this Complaint was employed as a correctional officer at Trousdale Turner Correctional Center.

18. Defendant Lybrunca Cockrill is a citizen of Tennessee who at all times relevant to this Complaint was employed as a correctional officer at Trousdale Turner Correctional Center.

### III. JURISDICTION AND VENUE

19. This Court has jurisdiction over the Plaintiff's federal claims in this civil action pursuant to 28 U.S.C. § 1331.

20. This Court has supplemental jurisdiction to adjudicate the Plaintiff's state law claims related to Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1367(a).

21. As the judicial district in which a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2). Venue is independently proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

### IV. FACTUAL ALLEGATIONS

22. Trousdale Turner Correctional Center is a private, for-profit prison operated by CoreCivic of Tennessee, LLC, in partnership with Trousdale County. In

---

[4] Jane is a pseudonym. Defendant Wright's first name is unknown. This Complaint will be amended—and her first name will be included—after discovery.

operating Trousdale Turner Correctional Center, CoreCivic is required to comply with minimum contract requirements established by the Tennessee Department of Correction, which monitors CoreCivic's compliance.

23. Trousdale Turner Correctional Center has never, in its entire history, been fully compliant with minimum contractual staffing requirements.

24. When minimum contractual staffing requirements are not met, CoreCivic facilities—including Trousdale Turner Correctional Center—experience heightened rates of violent incidents, including homicides, rapes, stabbings, and other assaults, only a small fraction of which are ever officially documented.

25. On May 13, 2022, Plaintiff Dakota Burchard was brutally beaten, sexually assaulted, and found unresponsive in his cell at Trousdale Turner Correctional Center.

26. The attack on Mr. Burchard was foreseeable. Prior to the assault, members of the Crips gang who were related to the victim of Mr. Burchard's underlying conviction approached Mr. Burchard with an ultimatum: pay them and provide free tattoos (Mr. Burchard is a talented artist), or get stabbed.

27. Given a week to choose between these two options, Mr. Burchard chose instead to try to save his own life and to try to get out of the pod alive.

28. Three days into his ultimatum, Mr. Burchard was able to pass a note to a guard telling them his life was in danger.

29. The guard took the note but did not help Mr. Burchard.

30. Three days later, Mr. Burchard was able to leave his cell and speak to prison staff.

31. On March 12, 2022, Mr. Burchard told Defendants Porter, Wright, Crawford, and Cockrill that his life had been threatened by other inmates and that he was

in danger.

32. Instead of providing any sort of assistance or investigating this threat, the Defendants added to Mr. Burchard's abuse by forcing him to his knees with the threat of pepper spray, put him in handcuffs, and forced him to walk bent over without shoes or socks back to his cell.

33. Back in his cell, the Defendants forced Mr. Burchard back to his knees, twisted his wrist, and disparaged him.

34. The Defendants then left Mr. Burchard in his cell, without assisting him, but with the assurance that they did not care that his life and safety has been threatened.

35. Just one day later, on May 13, 2022, Mr. Burchard's assailants entered his cell.

36. Despite the fact that all of Trousdale Turner Correction Center was supposed to be on an institutional lockdown that day, guards in the Echo Bravo pod where Mr. Burchard was housed allowed inmates out of their cells.

37. When Mr. Burchard's first assailant entered cell 204 that evening, Mr. Burchard was sitting down.

38. The assailant immediately began threatening him, telling Mr. Burchard that if he was not going to pay and provide free tattoos for the inmates, then he could just "make you my boy."

39. At that point, the inmate exposed his penis and hit Mr. Burchard in the face. Though he tried to protect himself, the assailant hit Mr. Burchard so hard in the ear that he collapsed straight to the ground in pain.

40. Already caught off guard, badly injured, and laying defenseless on the ground, two more assailants entered Mr. Burchard's cell and began to stomp on his head.

41. Laying on his stomach on the ground, Mr. Burchard felt one of the inmates pull down his jeans before being stomped in the head another time. This time, his face hit the concrete, and he was knocked completely unconscious. While unconscious, he was brutally raped.

42. By the time he regained consciousness, Mr. Burchard had received no help, no treatment, and had not been moved.

43. Instead, surrounded by the same Defendant guards who ignored Mr. Burchard's pleas for help prior to his assault—and despite the fact that he was completely unconscious—Mr. Burchard was *handcuffed*.

44. Only at that point, once Mr. Burchard was conscious and able to vocalize his pain while he sat in handcuffs, was he taken to medical.

45. Mr. Burchard was held in medical for observation overnight. The following afternoon, he was transported to Vanderbilt University Medical Center for treatment. There, he received treatment for his sexual assault, including a rape kit and evaluation of a busted eardrum, contusions, and a possible concussion. Mr. Burchard also had two black eyes and was in utter fear for his life.

46. At the hospital, Mr. Burchard was prescribed medication for the anxiety he was experiencing after having been brutally beaten and raped; prophylactic HIV medication to address concerns following his rape; and blood pressure medication.

47. The hospital also treated Mr. Burchard's left ear where he was punched to the ground initially. The tympanic membrane—or eardrum—was inflamed and perforated, which required medicated eardrops.

48. Around 1:30 a.m., Mr. Burchard was returned to Trousdale Turner Correctional Center.

49. Exhausted and still experiencing pain and dizziness as well as blurriness in his left eye, Mr. Burchard gave a statement to an official named Captain Hudson explaining the series of events leading to and comprising his assault.

50. Roughly six weeks later, Mr. Burchard returned to Vanderbilt to see an ear specialist.

51. Though his ear had significantly improved due to medication, he continued to suffer from blurry vision. Despite those complaints being well-documented, Mr. Burchard was never afforded access to an ophthalmologist.

52. Mr. Burchard also continued to complain of ongoing back pain but was not seen by any doctors since his Vanderbilt follow-up for his ear.

53. On May 16th 2022, Mr. Burchard filed a timely inmate grievance detailing his attack and requesting to be placed in a more secure environment. Weeks later, the grievance was adjudicated and denied.

54. One day after his first grievance was denied, Mr. Burchard filed a second timely inmate grievance under Title VI pursuant to TDOC Policy #501.01(K). This grievance was adjudicated and denied, too.

55. Mr. Burchard also filed a timely PREA grievance. Although Trousdale Turner Correctional Center staff refused multiple requests to provide him—and his counsel—copies of his grievance paperwork and its outcome, it is Mr. Burchard's understanding that his PREA grievance was adjudicated and denied as well.

56. Although Mr. Burchard's claims for monetary relief are non-grievable under TDOC policy, Mr. Burchard has fully exhausted his available administrative remedies to the extent possible. In response to his grievances, all of which were adjudicated and denied, Mr. Burchard received no relief and no help.

57. For nearly all of the one year since his assault, Mr. Burchard was held in segregation—more commonly known as solitary confinement—purportedly for his own protection.

58. As recently as March of 2023, inmates at Trousdale Turner have been allowed to spend some time in the rec cages outdoors. When Mr. Burchard did so, though, he was place in a cage directly across from the assailant who first entered his cell and punched him in the ear.

59. All three of Mr. Burchard's assailants remained housed at Trousdale Turner Correctional Center after his assault. So did many additional gang members who Mr. Burchard feared would harm him further if given the opportunity.

60. Having been ignored, on multiple occasions throughout the past year, and antagonized by the guards who are tasked with protecting Mr. Burchard, Mr. Burchard constantly lived in fear that he would be victimized yet again.

## V. CAUSES OF ACTION

### CLAIM #1: 42 U.S.C. § 1983—DELIBERATE INDIFFERENCE TO AND FAILURE TO PREVENT FORESEEABLE INMATE-ON-INMATE VIOLENCE (AS TO DEFENDANTS FRINK, PORTER, WRIGHT, CRAWFORD, AND COCKRILL)

61. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

62. At all times relevant to this Complaint, all of the CoreCivic Defendants had legal duties under the Eighth Amendment to protect Mr. Burchard from violence at the hands of other prisoners and to ensure Mr. Burchard's reasonable safety at Trousdale Turner Correctional Center.

63. In its entire history, including on the date of Mr. Burchard's assault, Trousdale Turner Correctional Center has never been fully staffed in compliance with

minimum contract requirements. All individual CoreCivic were aware of that fact.

64. All individual CoreCivic Defendants are and may be held liable for acting with deliberate indifference to Mr. Burchard's safety at Trousdale Turner Correctional Center.

65. Defendants Porter, Wright, Crawford, and Cockrill all failed to protect Mr. Burchard from a known and communicated risk of violence at the hands of multiple other prisoners despite being informed one day prior to the assault of the specific threat made against Mr. Burchard's life.

66. All individual CoreCivic Defendants failed to ensure Mr. Burchard's reasonable safety at Trousdale Turner Correctional Center.

67. All individual CoreCivic Defendants acted with deliberate indifference to Mr. Burchard's safety while he has been housed as an inmate at Trousdale Turner Correctional Center.

68. Defendants Porter, Wright, Crawford, and Cockrill were actually aware of specific and particularized risks of serious harm posed to Mr. Burchard as a result of his pleas for help.

69. Defendants Porter, Wright, Crawford, and Cockrill disregarded known risks to Mr. Burchard at Trousdale Turner Correctional Center by failing to take reasonable measures to abate them, instead telling Mr. Burchard they would not put up with any of "that bitch ass shit" and refusing to place him in protective custody when asked.

70. Defendants Porter, Wright, Crawford, and Cockrill were actually aware of specific and particularized risks of serious harm posed to Mr. Burchard as a consequence of his pleas for help.

71. Defendants Frink, Porter, Wright, Crawford, and Cockrill knew that Mr.

Burchard faced a substantial risk of serious harm at Trousdale Turner Correctional Center as a result of its understaffing on the date of his assault.

72. All individual CoreCivic Defendants were actually aware of the specific and particularized risks of serious harm posed to inmates like Mr. Burchard as a consequence of, *inter alia*, CoreCivic's chronic understaffing of Trousdale Turner Correctional Center; CoreCivic's failure to properly train and supervise the staff at Trousdale Turner Correctional Center to ensure adequate staffing levels; Trousdale Turner Correctional Center's failure to adhere to safety protocols; and Trousdale Turner Correctional Center's failure to classify and house inmates in its care correctly and in accordance with generally accepted practices in prison management.

73. At the time Mr. Burchard was violently assaulted, Trousdale Turner Correctional Center was plagued by constant and pervasive risks of physical harm to inmates.

74. At the time Mr. Burchard was violently assaulted, Trousdale Turner Correctional Center's pervasive risk of harm to inmates manifested in actual harm and a dramatically outsized number of serious inmate-on-inmate attacks, only a fraction of which were ever officially documented.

75. To the extent that CoreCivic attempts to segregate violent inmates from non-violent inmates at Trousdale Turner Correctional Center, such attempts are rendered ineffectual by the facts that inmates are misclassified; are often allowed to perpetuate violence when it benefits the guards; are not meaningfully secured in their cells due to defective doors that enable inmates to "pop out" at their leisure; and that entire pods are often left unsecured—even during lockdowns—due to understaffing. In combination with these chronic failures, Defendants Porter's, Wright's, Crawford's, and Cockrill's refusal to

respond to Mr. Burchard's pleas for help after having his life threatened proximately enabled Mr. Burchard's preventable physical and sexual assault.

76. Despite Defendant Frink's actual awareness of the severe risks to inmate safety within Trousdale Turner Correctional Center, Defendant Frink consciously and deliberately failed to address those risks because he did not care about maintaining inmate safety at Trousdale Turner Correctional Center and because indifference to inmate safety is more profitable.

77. Notwithstanding the many previous understaffing-enabled homicides and violent attacks at Trousdale Turner Correctional Center, violent inmate-on-inmate attacks have never been met with meaningful efforts to comply with minimum contractual staffing requirements.

CLAIM #2: LIABILITY UNDER *MONELL V. DEPT. OF SOCIAL SERVICES*, 436 U.S. 658 (1978)
(AS TO DEFENDANT CORECIVIC)

78. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

79. CoreCivic has an unconstitutional policy or practice of maintaining staffing levels at Trousdale Turner Correctional Center that are insufficient to ensure that inmates like Mr. Burchard are protected from inmate-on-inmate violence.

80. Defendant CoreCivic has adopted a policy and practice of severely understaffing its facilities, including Trousdale Turner Correctional Center, without regard to inmate safety because understaffing is more profitable.

81. CoreCivic's understaffing routinely results in hundreds or thousands of critical posts at Trousdale Turner Correctional Center being unfilled or understaffed every month.

82. During multiple consecutive quarters leading up to Mr. Burchard's assault, CoreCivic received notices from the TDOC detailing its consistent and severe noncompliance with minimum contractual staffing requirements.

83. Due to multiple audits and regular liquidated damages assessments identifying Trousdale Turner Correctional Center's severe understaffing issues, and due to thousands of violent incidents—both reported and unreported—at the facility over a period of years, CoreCivic had actual knowledge of Trousdale Turner Correctional Center's chronic understaffing problems at the time of the Plaintiff's assault, but it chose not to staff Trousdale Turner Correctional Center adequately.

84. At the time of Mr. Burchard's assault, CoreCivic's employees—including Defendant Frink, its on-site policymaker—had actual knowledge that Trousdale Turner Correctional Center's chronic understaffing problems resulted in an extraordinary and outsized level of inmate-on-inmate violence at the facility.

85. CoreCivic's policy and practice of understaffing is widespread, rampant, and endemic to CoreCivic's Tennessee prison facilities, including and especially Trousdale Turner Correctional Center.

86. Defendants CoreCivic and Frink, its on-site policymaker, knew of the heightened and chronic safety risks to inmates resulting from understaffing at Trousdale Turner Correctional Center, but they tolerated, maintained, and promoted understaffing to generate greater profits for CoreCivic at the expense of the safety of inmates like Mr. Burchard.

87. Mr. Burchard's assault is attributable to Defendant CoreCivic's policy and practice of failing to ensure adequate staffing at its prison facilities, including Trousdale Turner Correctional Center, which was explicitly or impliedly authorized by Defendant

- 14 -
Case 3:23-cv-00455   Document 1   Filed 05/08/23   Page 14 of 20 PageID #: 14

Frink and in which he knowingly acquiesced in accordance with CoreCivic's policy, custom, and practice of understaffing CoreCivic's Tennessee facilities.

88. If Mr. Burchard's pod had been properly supervised and locked down pursuant to the prison-wide institutional lockdown which was supposed to be in place at the time of Mr. Burchard's assault, he would not have been attacked by free-roaming inmates who had threatened to harm him before doing so.

87. Trousdale Turner Correctional Center's chronic understaffing also continues to remain unremedied even after Mr. Burchard's assault.

CLAIM #3: TENNESSEE COMMON LAW NEGLIGENCE
(AS TO DEFENDANTS CORECIVIC, PORTER, WRIGHT, CRAWFORD, AND COCKRILL)

88. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

89. Defendants CoreCivic, Porter, Wright, Crawford, and Cockrill owed a legal duty of care to Mr. Burchard to protect him from reasonably foreseeable harm.

90. Mr. Burchard informed Defendants CoreCivic, Porter, Wright, Crawford, and Cockrill of the specific risk of violence he was facing and asked to be placed in protective custody to avoid exactly the type of violent assault he was ultimately forced to suffer.

91. Defendants CoreCivic, Porter, Wright, Crawford, and Cockrill knew that ignoring a threat of violence at Trousdale Turner Correctional Center posed a significant risk of physical harm to Mr. Burchard because similar acts of violence are routinely perpetuated there.

92. Based on Mr. Burchard's multiple requests for protection after conveying the specific threat made against his life if he did not pay, Defendants CoreCivic, Porter,

Wright, Crawford, and Cockrill had actual and constructive notice of the risk of foreseeable harm that Mr. Burchard's assailants posed specifically, and they had reason to anticipate the attack.

93. Such extortion is endemic to Trousdale Turner, and it is pervasive at all of CoreCivic's Tennessee facilities. CoreCivic, and all of its on-site employees, know this, but they choose to do nothing about it.

94. Defendants CoreCivic, Porter, Wright, Crawford, and Cockrill knew or should have known that Mr. Burchard would become the victim of an attack, but they failed to use reasonable care to prevent it.

95. Defendants CoreCivic, Porter, Wright, Crawford, and Cockrill breached their duty of care to Mr. Burchard, and their breaches proximately caused Mr. Burchard to suffer a violent assault at the hands of inmates who Mr. Burchard warned had threatened him.

CLAIM #4: STATE LAW NEGLIGENT SUPERVISION
(AS TO DEFENDANT TROUSDALE COUNTY)

96. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

97. Trousdale Turner Correctional Center is operated by CoreCivic pursuant to a contract with Defendant Trousdale County, Tennessee, a Tennessee municipality.

98. Defendant Trousdale County does not meaningfully supervise CoreCivic's operation of Trousdale Turner Correctional Center.

99. Defendant Trousdale County does not meaningfully supervise CoreCivic's operation of Trousdale Turner Correctional Center in part because CoreCivic has contractually agreed to indemnify Trousdale County from damages assessments and legal

liability.

100. Mr. Burchard was violently assaulted at the hands of inmates who were allowed to roam throughout their pod freely during an institutional lockdown.

101. Trousdale County knew that CoreCivic routinely understaffed Trousdale Turner Correctional Center at the time of Mr. Burchard's assault, because it was regularly notified of that fact.

102. Trousdale County knew that CoreCivic routinely violated minimum staffing and other minimum contract requirements, because the TDOC regularly transmitted Trousdale County notice of damages assessments for such violations.

103. Even so, Trousdale County unreasonably failed to exercise due care to ensure CoreCivic's compliance with minimum contract requirements at Trousdale Turner Correctional Center, including requirements that CoreCivic staff critical posts at the facility, aimed at protecting both inmates and staff.

104. Defendant Trousdale County also had actual knowledge of the extraordinary and outsized degree of inmate-on-inmate violence at Trousdale Turner Correctional Center and its pervasive non-compliance with contract obligations, including staffing obligations, at the time of Mr. Burchard's assault.

105. Even so, Defendant Trousdale County unreasonably failed to exercise due care to ensure staffing compliance and failed to ensure a reasonable degree of safety at the facility.

106. Defendant Trousdale County had a duty to all inmates at Trousdale Turner Correctional Center, including Mr. Burchard, to ensure adequate staffing and safety of Trousdale Turner Correctional Center.

107. By failing to ensure adequate staffing and safety at Trousdale Turner

Correctional Center despite its actual knowledge of CoreCivic's understaffing and other pervasive noncompliance with minimum contract requirements, Defendant Trousdale County breached this duty of care.

108. Defendant Trousdale County knew at the time of Mr. Burchard's assault that CoreCivic was unfit to handle the job of maintaining an adequate level of staffing and safety at Trousdale Turner Correctional Center and that it routinely failed to comply with its contractual obligations, often with deadly consequences.

109. Trousdale Turner Correctional Center is "not being operated pursuant to the Private Prison Contracting Act of 1986[,]" which only permits Defendant CoreCivic to operate directly a single private prison in Tennessee. *See Friedmann v. Corr. Corp. of Am.*, 310 S.W.3d 366, 378 (Tenn. Ct. App. 2009).

110. Instead, Trousdale Turner Correctional Center is "being operated pursuant to [a] contract[] with [a] local governmental entit[y] rather than the State of Tennessee, . . . pursuant to the County Correctional Incentives Act of 1981, Tenn. Code Ann. § 41–8–101, et seq." *Id.* at 379.

111. This Act permits Defendant Trousdale County to contract with Defendant CoreCivic to "house additional **nondangerous** felony offenders locally." *See* Tenn. Code Ann. § 41-8-102 (emphasis added).

112. This restriction notwithstanding, at the time of the Plaintiff's assault, CoreCivic housed dangerous felony offenders at Trousdale Turner Correctional Center, and dangerous felony offenders assaulted him.

113. Defendant Trousdale County knew that CoreCivic illicitly housed dangerous felony offenders at Trousdale Turner Correctional Center at the time of the Plaintiff's assault.

114. Even so, Trousdale County unreasonably failed to exercise due care to ensure CoreCivic's compliance with requirements that only nondangerous felony offenders be housed there.

115. Defendant Trousdale County also had actual knowledge of the extraordinary and outsized degree of inmate-on-inmate violence at Trousdale Turner Correctional Center and its pervasive non-compliance with contract obligations, including staffing obligations, at the time of the Plaintiff's assault.

116. Notwithstanding its actual knowledge that CoreCivic was chronically violating minimum TDOC contract requirements, including related to failure to staff critical security posts, Trousdale County chose not to meaningfully supervise CoreCivic or take action to remedy deficient security conditions there because CoreCivic agreed to indemnify Trousdale County for any resulting damages or violations.

117. At the time of the Plaintiff's assault, and unrelated to any inmate's civil rights, Defendant Trousdale County had a duty to all inmates at Trousdale County Correctional Center, including the Plaintiff, to ensure adequate staffing and safety of Trousdale County Correctional Center and to ensure CoreCivic's compliance with minimum safety and security standards.

118. Trousdale County negligently supervised CoreCivic and allowed it to chronically violate minimum safety, staffing, and security requirements instead.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief:

1. That proper service issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2. That the Plaintiff be awarded all compensatory, consequential, and incidental damages to which the Plaintiff is entitled in an amount not less than $1 million;

3. That the Plaintiff be awarded punitive damages in an amount not less than $3 million;

4. That the Plaintiff be awarded reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b);

5. That a jury of 12 be empaneled to try this cause;

6. That pre-judgment and post-judgment interest be awarded to the Plaintiff; and

7. That the Plaintiff be awarded all further relief to which the Plaintiff is entitled.

Respectfully submitted,

/s/ Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176
Lindsay E. Smith, BPR #035937
Melissa K. Dix, BPR #038535
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*