IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| DAKOTA BURCHARD, § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | | |
| § | | |
| CORECIVIC OF TENNESSEE, LLC, § | | |
| as owner and operator of TROUSDALE § | Case No. 3:23-cv-00455 | |
| TURNER CORRECTIONAL CENTER, § | | |
| TROUSDALE COUNTY, TENNESSEE, § | | |
| MARTIN FRINK, JERMARIS PORTER, § | | |
| [JANE] WRIGHT, COURTNEY § | | |
| CRAWFORD, and LYBRUNCA § | | |
| COCKRILL, § | | |
| § | | |
| *Defendants*. § | | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO MODIFY PROTECTIVE ORDER**

## I. INTRODUCTION

Comes now Plaintiff Dakota Burchard, through undersigned counsel, and respectfully moves this Court to issue an order modifying the parties' protective order in this case: (1) to remove all confidentiality designations in two transcripts obtained in discovery, *see* Docs. 47–48; and (2) to allow Plaintiff's counsel to provide all marked-confidential documents obtained during discovery in this case to the United States Department of Justice. For the reasons detailed below, the controversy presented by this motion remains live, and the relief sought here would further both Mr. Burchard's interests and the public's. Further, State officials' attempts to use bogus confidentiality designations to obstruct the DOJ's pending investigation into Trousdale Turner

Correctional Center and conceal from both the public and the Department of Justice damning documents that confirm the State's knowledge and tolerance of massive malfeasance at the facility should not be permitted. Thus, this motion should be granted.

## II. FACTS

Before this case settled, it concerned a brutal physical and sexual assault perpetrated against Plaintiff Dakota Burchard while he was incarcerated at Defendant CoreCivic's Trousdale Turner Correctional Center. Compl. at 1. Despite having repeatedly asked to be placed on protective custody due to a threat made against him, prison officials took no action to ensure that Mr. Burchard would be kept safe. *Id.* at 1–2. As such, multiple inmates entered Mr. Burchard's cell, beat him until he was unconscious, and sexually assaulted him. *Id.* at 2–3. Afterward, Mr. Burchard was left in his cell unconscious with his pants pulled down, *id.* at 3, where CoreCivic officials later found him.

Following these events, Mr. Burchard filed a four-count civil rights and negligence complaint. *See generally id.* Mr. Burchard's Complaint alleged that Defendants Frink, Porter, Wright, Crawford, and Cockrill were liable for their deliberate indifference and failure to protect; that Defendant CoreCivic was liable pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) for its unconstitutional policies and practices; that Defendants CoreCivic, Porter, Wright, Crawford, and Cockrill were liable for common law negligence; and that Defendant Trousdale County was liable for its negligent supervision of CoreCivic's operation of Trousdale Turner Correctional Center. *Id.* at 10–19.

After this case was filed, this Court entered an initial case management order. *See generally* Doc. 14. Discovery ensued thereafter and, on April 19, 2024, the Defendants filed a *Joint Motion to Enter Agreed Protective Order* along with the parties' proposed

blanket protective order. *See* Doc. 22, 22-1. On June 3, 2024, this Court entered the *Agreed Protective Order Against Unauthorized Use or Disclosure of Confidential Information*. *See* Doc. 28. The Plaintiff then obtained extensive documents throughout discovery—including documents created by and testimony given by governmental non-parties—many of which were marked confidential pursuant to this Court's protective order. Mr. Burchard and his counsel have treated all marked-confidential documents confidentially throughout this litigation.

On August 14, 2024, the parties notified this Court that a resolution had been reached and that a stipulation of dismissal was forthcoming. Doc. 43. A *Joint Stipulation of Dismissal with Prejudice* was then filed on August 23, 2024, *see* Doc. 45, and on August 27, 2024, this Court dismissed this case with prejudice, *see* Doc. 46. This Court's August 27, 2024 dismissal order triggered the beginning of a sixty-day period after which the Plaintiff is required, under the Parties' protective order, to destroy any marked-confidential documents that he obtained during discovery. *See* Doc. 28 at 7 ("Within sixty (60) days after the conclusion of the litigation, a party in the possession of discovery responses, documents, information, or materials designated as 'CONFIDENTIAL' or 'CONFIDENTIAL ATTORNEY'S EYES ONLY,' other than that which is contained in pleadings and hearing or deposition transcripts that have been filed before the Court, shall destroy such discovery responses, documents, information, or materials.").

Six days after the Parties announced that they had settled this action—and one day after this Court administratively closed this case—the United States Department of Justice announced "that it ha[d] opened an investigation into the conditions at Trousdale Turner Correctional Center, a Tennessee Department of Correction facility operated by the private correctional management company CoreCivic." *See* **Ex. 1** (DOJ Press Release)

at 1; *see also* **Ex. 2** (DOJ Notice Letter to Governor Lee). "Based on an extensive review of publicly available information and information gathered from stakeholders, the [Department of Justice] has found significant justification to open this investigation, including state audits that have flagged dangerous understaffing and safety concerns since Trousdale Turner first opened in 2016." **Ex. 1** at 1. The DOJ's investigation "will examine whether Tennessee protects those incarcerated at Trousdale Turner from harm, including physical violence and sexual abuse." *Id.*

The Department of Justice notified State officials that it would "work cooperatively with them in conducting the investigation and identifying solutions to any problems that are uncovered." *Id.* After being notified of the DOJ's investigation, **Ex. 2**, Governor Lee publicly asserted—in response to the investigation—that "we want to know when there are deficiencies" and "[w]e want to know that we're operating our prisons in the way that we should, and we'll determine that through this process." **Ex. 3** (Channel 5 Article), at 3.

Despite proclaiming publicly that Tennessee "want[s]" the DOJ's investigation to be productive and to learn from it, *see id.*, *in private*, the Tennessee Department of Correction has sought to obstruct the DOJ's investigation. That includes refusing to remove confidentiality designations from depositions of TDOC officials that would meaningfully assist the DOJ's investigation and refusing to permit Mr. Burchard to share those materials with the DOJ even subject to the Court's protective order here. *See* **Ex. 4** (Correspondence) at 1. In particular, in response to Mr. Burchard's requests to that effect, the TDOC's counsel responded:

> I have spoken with my client and the Department is not agreeable to remove the confidential designations of any of the documents it produced. TDOC does not wish to waive any protections as set forth in the protective order.

> To be clear, TDOC does not consent to remove the confidentiality designations related to the transcripts of Christopher Brun and/or Kelly Hunt, nor does it consent to remove the confidentiality designations of the exhibits marked and/or utilized during each of the aforementioned depositions. TDOC further opposes any motion to remove the confidentiality designations regarding these materials.

*Id.*

The most remarkable thing about the TDOC's position here is that it is strictly an effort to obstruct the DOJ's civil rights investigation and nothing more. The documents that the TDOC marked confidential—and the TDOC's employees' corresponding testimony about those underlying documents (all of which were subpoenaed from *Twilley v. CoreCivic, et al.*, MDTN Case 3:23-cv-00077)—are not confidential. Indeed, the same underlying documents were produced, separately, to Mr. Burchard *in this case* without any confidentiality designations. *See* **Exs. 5–9**. The documents were also temporarily unsealed in *Twilley* itself after the TDOC neglected a filing deadline, which resulted in the Tennessean reporting on the documents and the powerfully revealing information that they contain. *See* **Ex. 10**, Evan Mealins, *Court records detail years of understaffing at a Tennessee CoreCivic prison*, THE TENNESSEAN (Feb. 20, 2024), https://www.tennessean.com/story/news/2024/02/20/tennessee-department-of-corrections-records-show-corecivic-prison-understaffing/72525856007/.

After that public reveal, there was no apparent impact on prison safety or security. Instead, the only apparent result was that, "[b]ased on an extensive review of publicly available information and information gathered from stakeholders, the [DOJ] has found significant justification to open [a civil rights] investigation[.]" **Ex. 1** at 1.

Of material note, as part of the DOJ's "comprehensive" investigation into Tennessee's tolerance of the chronically unconstitutional conditions at Trousdale Turner

Correctional Center, *see id.*—and because it is common knowledge that Plaintiff's counsel has been involved in litigation against CoreCivic and Trousdale Turner for many years—the Department of Justice has contacted Plaintiff's counsel regarding its investigation and sought relevant information and documents from him. Mr. Burchard—who owns the documents in his casefile—has since instructed his counsel to cooperate with and support the DOJ's investigation in any way possible.

Mr. Burchard's counsel is currently prohibited from providing the DOJ with vitally significant records in Mr. Burchard's casefile because the TDOC has baselessly marked them confidential, however. As such—and because the non-parties have declined either to voluntarily withdraw their confidentiality designations or to permit Mr. Burchard to share the relevant marked-confidential documents with the DOJ subject to the Court's protective order here—the Plaintiff now moves this Court to modify its protective order: (1) to remove all confidentiality designations in two transcripts obtained in discovery, *see* Docs. 47–48; and (2) to allow Plaintiff's counsel to provide all documents obtained during discovery in this case to the United States Department of Justice.

### III. ARGUMENT

**A.    THIS COURT HAS JURISDICTION TO MODIFY THIS CASE'S PROTECTIVE ORDER.**

"'Clearly, the power of a district judge includes the power to modify a protective order.'" *Dwyer v. Sw. Airlines Co.*, No. 3:17-CV-03262, 2022 WL 1164227, at *7 (M.D. Tenn. Apr. 19, 2022) (quoting *In re Upjohn Co.*, 664 F.2d 114, 118 (6th Cir. 1981); *see also Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 782 (1st Cir. 1988) ("We note that the courts and commentators seem unanimous in finding such an inherent power to modify discovery-related protective orders, even after judgment, when circumstances justify.") (collecting authorities). That remains true "even after a case has been settled and

-6-
Case 3:23-cv-00455    Document 51    Filed 09/23/24    Page 6 of 20 PageID #: 955

dismissed." *Garton v. Crouch*, No. 23-6002, 2024 WL 3569520, at *4 (6th Cir. July 29, 2024) ("We have previously recognized that protective orders may be modified and revoked by a district court even after a case has been settled and dismissed.") (citing *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 160 (6th Cir. 1987) (authorizing a challenge to a protective order notwithstanding that "[t]he case was settled and dismissed with prejudice")).

For these reasons, "[a] protective order is always subject to modification or termination for good cause . . ., even where the parties have consented to its entry." *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 914 (E.D. Tenn. 2009) (internal citations omitted). A district court certainly "retains jurisdiction and authority to modify or revoke" a protective order where—as here—the order remains in effect after judgment and "on its face survives the underlying litigation[.]" *See Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499 (D. Md. 2000) ("There seems to be little doubt that a protective order issued by a court . . . which on its face survives the underlying litigation, continues to have full force and effect on the parties subject to it even after final resolution of the underlying case, and the issuing court retains jurisdiction and authority to modify or revoke it.") (citing *Public Citizen*, 858 F. at 780–82 (1st Cir. 1988) (holding that the issuing court necessarily has the power to enforce a protective order it issued at any point it is in effect, even after entry of a final judgment, and courts enjoy the inherent power to modify any discovery related orders post-judgment); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (noting that as long as a protective order remains in effect, the court that entered it retains jurisdiction to modify it, even if the underlying suit has been dismissed); *Rogers v. Proctor & Gamble Co.*, 107 F.R.D. 351, 352 (E.D. Mo. 1985) (concluding that every court has supervisory power over its own record and files,

and the decision to lift a protective order is a discretionary function for the court that issued it)).

For these reasons, this Court has jurisdiction to adjudicate this motion.

**B. MR. BURCHARD HAS STANDING TO MOVE THIS COURT TO MODIFY ITS PROTECTIVE ORDER.**

When a litigant "is himself an object of" challenged action, the Supreme Court has held that "there is ordinarily little question that the action . . . has caused him injury, and that a judgment preventing . . . the action will redress it." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). The Sixth Circuit recognizes this rule. *See Consumers' Rsch. v. Fed. Commc'ns Comm'n*, 67 F.4th 773, 783–84 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2628 (2024) ("When the party is 'an object of the action ... at issue ... there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'") (quoting *Lujan*, 504 U.S. at 561–62). Other circuits do, too. *See, e.g., Contender Farms, L.L.P., v. United States Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) ("[A] basic question ...underlies all three elements of standing—'whether the plaintiff is himself an object' of the challenged regulation.") (quoting *Lujan*, 504 U.S. at 561); *Sierra Club v. E.P.A.*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) (when a plaintiff is the object of challenged action, "standing to seek review . . . is self-evident; no evidence outside the administrative record is necessary for the court to be sure of it.").

With these considerations in mind, there is "no question" that litigants have standing to challenge a legal restriction that "is directed at them in particular[,]" especially when—as here—"they are quite clearly exposed to the imposition of strong sanctions" if they do not comply. *Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967); *see*

*also West Virginia v. EPA*, 597 U.S. 697, 719 (2022) ("there can be 'little question' that the rule does injure the States, since they are 'the object of' its requirement that they more stringently regulate power plant emissions within their borders.") (quoting *Lujan*, 504 U.S. at 561-62). As one former Justice explained it:

> [W]hen an individual who is the very *object* of a law's requirement or prohibition seeks to challenge it, he always has standing. That is the classic case of the law bearing down upon the individual himself, and the court will not pause to inquire whether the grievance is a "generalized" one.

Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 894 (1983).

Here, Mr. Burchard is "an object" of the protective order that he now seeks to modify. The challenged protective order imposes continuing confidentiality obligations on Mr. Burchard, specifically, and on his counsel. It also exposes Mr. Burchard, specifically, to civil and criminal contempt sanctions if he violates the order. And it prevents Mr. Burchard from assisting the DOJ with a civil rights investigation that Mr. Burchard wants to support—an interference with Mr. Burchard's right to communicate that is a constitutional injury in and of itself. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("the protection afforded [by the First Amendment] is to the communication, to its source and to its recipients both."); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("traditional harms may also include harms specified by the Constitution itself.").

Mr. Burchard's injury also is both caused by the protective order and redressable by modifying it. Without a protective order in place, Mr. Burchard would be able to publicize and disseminate to the DOJ the marked-confidential materials in his casefile. *See Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.*, 748 F.2d 1421, 1424 (10th Cir. 1984)

("parties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order"); *San Jose Mercury News, Inc. v. United States Dist. Ct.--N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public."); *cf. Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201, 206 (D. Colo. 2002) ("In the absence of a showing of good cause for confidentiality, the parties are free to disseminate discovery materials to the public."). Because the protective order is in place, however, Mr. Burchard cannot publicize and disseminate to the DOJ the marked-confidential materials in his casefile. Thus, the protective order is the cause of Mr. Burchard's injuries, and modifying the order will redress them.

**C.   THIS COURT SHOULD MODIFY THIS CASE'S PROTECTIVE ORDER.**

1. <u>This is an appropriate time to consider whether the Government's confidential designations are proper and whether continued protection is warranted.</u>

The end of merits litigation is often the most appropriate time to modify an earlier-entered protective order. Four primary reasons support this conclusion.

*First*, "[p]rotective orders serve to facilitate and expedite discovery and are often essential to the proper functioning of civil discovery." *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d at 913–14. Thus, they "allow[] a large volume of documents to be produced without the burden of [protracted] litigation[,]" *see id.*, and they "facilitate smooth and open discovery[.]" *Huizinga v. Genzink Steel Supply & Welding Co.*, No. 1:10-CV-223, 2011 WL 13228132, at *1 (W.D. Mich. June 24, 2011). Put another way: protective orders enable parties to exchange information during litigation without corresponding delay, thereby preventing district courts from having to modify case management deadlines to

accommodate confidentiality disputes whenever confidentiality disputes emerge.

These considerations vanish after litigation ends, though. In particular, because the merits of this case have concluded, there is no risk that this motion—or this court's consideration of it—will delay the orderly progression of this case or interfere with any case management deadline. Instead, this Court need only determine—without risk of delaying trial or any other litigation deadline—whether and to what extent continued protection of the marked-confidential documents is warranted.

*Second*, the end of litigation will often result in the reasons supporting protection having "either passed or weakened[.]" *Cf. In re Cendant Corp.*, 260 F.3d 183, 196 (3d Cir. 2001) ("The strong presumption of public access forces district courts to be cognizant of when the reasons supporting sealing in a specific case (if any are found) have either passed or weakened, and to be prepared at that time to unseal bids and allow public access. Even if a sealing order was proper at the time when it was initially imposed, the sealing order must be lifted at the earliest possible moment when the reasons for sealing no longer obtain."); *Pelzer v. Vassalle*, 655 F. App'x 352, 366 (6th Cir. 2016) ("Midland has already offered to unseal those filings once the settlement becomes effective, thus obviating this objection."). These considerations matter here, given that the marked-confidential documents at issue—some of which contain information that is now several years old—have become staler with each passing day.

*Third*, undertaking a post-judgment inquiry into the propriety of protective order designations enables courts to address "issue[s] of public disclosure" that generally are "never squarely raised" during litigation and which district courts accordingly "never had occasion to" consider earlier. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 930 (6th Cir. 2019). That is because, despite Rule 26's "formal requirements, 'it is common

practice for parties to stipulate to [protective] orders." *Id.* at 929 (citing *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 229 n.1 (6th Cir. 1996) (Brown, J., dissenting)).  Thus, as here, "[p]rotective orders 'are often blanket in nature, and allow the parties to determine in the first instance whether particular materials fall within the order's protection.'" *Id.* at 930 (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)).  For all of these reasons, the end of litigation will often be—and, here, it is—the first time a court itself has occasion to consider whether specific materials actually merit protection under Rule 26.

<u>Fourth</u>, the end of litigation is an appropriate time to examine whether "changed circumstances" merit modifying protection that was initially granted.  *See, e.g., Smith v. FirstEnergy Corp.*, No. 2:20-CV-3755, 2021 WL 1940234, at *4 (S.D. Ohio May 14, 2021) ("if necessary, this portion of the Protective Order will be vacated and amended to conform to the changed circumstances."); *Air-Sea Forwarders, Inc. v. Air Asia Co.*, 191 F.3d 459 (9th Cir. 1999) (citing authority that "a district court necessarily retains the power to modify such orders in light of changed circumstances"); *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.2 (9th Cir. 1999) ("When, on the other hand, we review a district court's refusal to modify a protective order on the ground of changed circumstances, the legal basis for the original order is not at issue.").  Such circumstances may include—as here—a major development such as the United States Department of Justice announcing a civil rights investigation into the exact facility at issue in this litigation and state officials' knowledge and tolerance of the deficient conditions there, paired with a party's possession of marked-confidential discovery materials that bear directly on the subjects of the DOJ's investigation.

For all of these reasons, this is an appropriate time to consider whether the

Government's confidential designations are proper and whether continued protection of the marked-confidential documents is warranted.

2. <u>The records that the TDOC designated confidential do not merit protection.</u>

"A protective order shall only be entered upon a showing of 'good cause' by the party seeking protection." *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 929. "To show good cause for a protective order, the [party seeking protection] is required to make 'a particular and specific demonstration *of fact*, as distinguished from stereotyped and conclusory statements.'" *Id.* (emphasis added) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (in turn quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981))). In all cases, "[t]he burden of establishing good cause for a protective order rests with" the party seeking protection. *See Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citing *Gen. Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir. 1973)); *see also In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 931 ("although Intervenors challenge the Protective Order, the burden of demonstrating good cause not to disclose the ARCOS data remains with the DEA and Defendants (as the parties seeking protection)").

Because protective orders result in information being withheld from the public, a movant's burden to show that a protective order should issue is "heavy[.]" *Anderson v. City of Fulton, Kentucky,* No. 5:18-CV-00032-TBR-LLK, 2019 WL 729986, at *1 (W.D. Ky. Feb. 20, 2019) ("Because entry of a protective order is contrary to the basic policy in favor of broad discovery, the party that seeks a protective order has a heavy burden to show substantial justification for withholding information from the public."). Discovery-related protective orders accordingly must be supported by "compelling reasons[.]" *See Meyer Goldberg,* 823 F.2d at 162 ("[A]s a general proposition, pretrial discovery must

take place in the public unless compelling reasons exist for denying the public access to the proceedings."); *see also Solar X Eyewear, LLC v. Bowyer*, No. 1:11-CV-763, 2011 WL 3921615, at *1 (N.D. Ohio Sept. 7, 2011) ("The Sixth Circuit recognizes a presumption of public access to discovery materials." (citing *Meyer Goldberg, Inc.*, 823 F.2d at 162–64)).

"In considering whether good cause for protection exists, [courts] balance the interests in favor of disclosure against the interests in favor of nondisclosure." *Id.* (citing *The Courier J. v. Marshall*, 828 F.2d 361, 367 (6th Cir. 1987); *Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 838 (6th Cir. 2017)). Thus, courts must "balance . . . the public interest in learning what" the marked-confidential documents contain against a protection proponent's interest in keeping them secret. *Id.* The public's transparency interests also carry outsized importance in civil rights cases involving government officials, where protective orders should be issued sparingly. *Shingara v. Skiles*, 420 F.3d 301, 308 (3d Cir. 2005) ("the last two factors clearly weigh against the protective order. The parties benefitting from the protective order are public officials, and the case certainly involves 'issues important to the public.'"); *cf. Longenbach v. McGonigle*, 750 F. Supp. 178, 180–81 (E.D. Pa. 1990) (it does not "make any sense to allow the state, under whose color of authority officers have allegedly violated rights, to limit unilaterally the availability of evidence."); *Pearson v. Miller*, 211 F.3d 57, 68 (3d Cir. 2000) ("The appropriateness of deference to a state's law of privilege is diminished, however, in cases in which a defendant state actor alleged to have violated citizens' federal rights is asserting the privilege."); *Am. C.L. Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981) ("there is a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged.") (quoting *Carr v. Monroe Mfg. Co.*, 431 F.2d 384, 389 (5th Cir. 1970) ("this is a suit against the highest

official of the very government agency asserting the privilege. In such cases there is a special danger in the government official having the power to define the scope of his own privilege, free of supervision by the courts.").

Here, the TDOC's confidentiality designations are uniformly improper. Nearly all of the portions of the transcript that have been designated confidential by the TDOC concern chronic understaffing at Trousdale Turner Correctional Center for a period spanning years. That information has nothing to do with medical or identifying information in the TDOC's liquidated damages reports or the infeasibility of redaction, which the TDOC has previously claimed justify secrecy.

Nor is confidentiality warranted for any other reason. The same reports that Mr. Brun discussed in his deposition—testimony about which the TDOC insists is confidential—were previously unsealed and made available to the public after the TDOC neglected a filing deadline. **Ex. 10**. Afterward, because they carry significant public interest value, local media reported on them. *Id.*

Further, nearly all of the same reports about which Mr. Brun testified were later produced to the Plaintiff *in this litigation* without any claim of confidentiality. **Exs. 5– 9**. Thus, even if the TDOC's confidentiality designations regarding the Trousdale Turner liquidated damages and other reports had merit when they were first made, they do not any longer, because Plaintiff's counsel may disseminate the separately received, nearly identical materials "in whatever manner" he sees fit. *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 567 (E.D. Va. 2010) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) ("Absent a protective order, parties to a lawsuit may disseminate materials obtained during discovery as they see fit.")); *see also id.* at n.7 (collecting cases). And because Mr. Brun's and Ms. Hunt's depositions illuminate the

significance of those documents, why they matter to inmate safety, and the utter indifference of Government officials to known security failures at Trousdale Turner Correctional Center, their corresponding deposition testimony should be removed of any confidentiality designation, too.

The testimony of government officials about a private prison contractor's chronic non-compliance with safety standards and contractual staffing requirements also is important information of public interest that does not merit confidentiality. As noted, to warrant protection, the party seeking protection is required to make "'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 929 (quoting Fed. R. Civ. P. 26(c)(1)). That burden is also especially heavy where, as here, there is enormous public interest in transparency regarding the litigation's subject matter. *See, e.g., id.* at 934–38 (emphasizing "the significant public interest" in public disclosure of protected materials when vacating protective order); *cf. Shane Grp., Inc.*, 825 F.3d at 305 ("the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access.").

To the extent that balance ever favored the Government's claims of protection, it does not any longer. The Department of Justice has opened a civil rights investigation into Tennessee's knowing tolerance of the chronically deficient conditions at Trousdale Turner Correctional Center. For that investigation—which is being conducted in the public's name and according to federal law—to be productive, the DOJ needs access to all relevant evidence. Mr. Burchard has a great deal of it. For reasons that this Court will have little difficulty surmising, though, the Government and CoreCivic would prefer to prevent the DOJ from receiving that evidence in the hopes that this Court's protective

order will require Mr. Burchard to destroy it before the DOJ can receive it. This Court should not allow itself to be made a party to such naked obstruction, which (among other things) flatly contravenes Tennessee's public claim to want the DOJ's investigation to be productive. *See* **Ex. 3** at 3.

The information that the TDOC, at minimum, has designated confidential also never met the requirements of this Court's protective order in the first place. To merit a confidentiality designation, the transcripts at issue would have "to contain information involving confidential business or security information or information invasive of legitimate privacy interests." *See* Doc. 28 at 1–2. That standard is not met here, especially given that the TDOC has repeatedly released the information it claims is confidential without any restriction or assertion of confidentiality, including to Mr. Burchard in this case. *See* **Exs. 5–9.**

At minimum, the Government "has the burden of establishing that the discovery responses, documents, information, or materials are entitled to protection." Doc. 28 at 6. The TDOC, at minimum, has not met that burden. Its generalized, conclusory claims about risks to prison security—none of which has ever been substantiated with evidence— do not suffice. Neither does, for instance, noting the fact that eight lines of testimony in a 254-page transcript discussed general information about what a "security round" is, particularly given that the TDOC posts the exact same information on its public website. See https://www.tn.gov/content/dam/tn/correction/documents/506-16.pdf at p. 10 ("All segregated units/pods shall be monitored on an irregular basis at least every 30 minutes.").

For all of these reasons, the confidentiality designations in Mr. Brun's and Ms. Hunt's transcripts and the documents exhibited to those transcripts should be removed.

### 3. Mr. Burchard should be permitted to share all marked-confidential materials with the DOJ.

Apart from the Government's bogus confidentiality justifications, the Plaintiff should be permitted to share all marked-confidential material in his possession with the Department of Justice subject to this Court's protective order. There is no good-faith reason apparent to Mr. Burchard why such a request would be opposed.

The only reason any litigant involved in this case has given to date to support opposing allowing Mr. Burchard to share marked-confidential documents with the DOJ subject to this Court's protective order is that Mr. Burchard ought to trust Tennessee government officials to provide relevant materials to the DOJ itself. *See* **Ex. 11** (Email from District Attorney Lawson's counsel). Of course, if Tennessee's government officials could be trusted to care about the chronic civil rights abuses that have transpired at Trousdale Turner Correctional Center throughout its entire existence, then they would not have ignored those abuses and allowed them to fester and worsen—without a hint of meaningful regulatory action—for what is now coming up on a decade.

Nor should Mr. Burchard have to trust Tennessee government officials who have proven time and again that they are unwilling to check CoreCivic's abuses to take appropriate action now. Mr. Burchard doesn't trust Tennessee's government officials, and he shouldn't have to. The fact that Tennessee's government officials will not agree to allow Mr. Burchard to share marked-confidential materials with the DOJ *even subject to this Court's protective order* also betrays the reality that something else is motivating their demand for continued secrecy here.

For all of these reasons, this Court's protective order should be modified to allow Plaintiff's counsel to provide all marked-confidential documents obtained during

discovery in this case to the United States Department of Justice.

## IV. CONCLUSION

For the foregoing reasons, this Court should modify the parties' protective order in this case: (1) to remove all confidentiality designations in two transcripts obtained in discovery, *see* Docs. 47–48; and (2) to allow Plaintiff's counsel to provide all marked-confidential documents obtained during discovery in this case to the United States Department of Justice.

Respectfully submitted,

/s/ Daniel A. Horwitz_____
DANIEL A. HORWITZ, BPR #032176
LINDSAY SMITH, BPR #035937
MELISSA DIX, BPR #038535
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of September, 2024, a copy of the foregoing was sent via certified USPS mail, postage prepaid, the Court's electronic filing system, or via email to the following:

Erin Palmer Polly, BPR #022221
Joseph F. Welborn, III, BPR #015076
Terrence M. McKelvey, BPR #036531
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, TN 37203
Erin.polly@klgates.com
Joe.welborn@klgates.com
Terrence.mckelvey@klgates.com
(615) 780-6700

*Counsel for Defendants CoreCivic of Tennessee, LLC, Trousdale County, Tennessee, Lybrunca Cockrell, Cortney Crawford, Martin Frink, and Jermaris Porter*


David Wickenheiser | Assistant Attorney General
Law Enforcement and Special Prosecutions Division
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
615.532.7277
David.Wickenheiser@ag.tn.gov

*Counsel for District Attorney Lawson*


Matthew Kubicek | Assistant Attorney General
Office of the Tennessee Attorney General
Law Enforcement and Special Prosecutions Division
P.O. Box 20207
Nashville, TN 37202-0207
p. 615.741.6739
Matthew.Kubicek@ag.tn.gov

*Counsel for the Tennessee Department of Correction*


By:    /s/ Daniel Horwitz
        DANIEL A. HORWITZ, BPR #032176